Oh yes, oh yes, oh yes. The Honorable Doug Ford, 5th District of the State of Illinois, is now in session. Please be seated. Please be seated. Thank you. First case is People v. Brandon R. Ford, 5-22-0240. Welcome to the historic 5th District Courthouse. It's our first full day of in-person oral arguments since COVID. I've been on the floor for three years now, and this is my first time in person. We've been Zoomed for a while now. Welcome to the court. We share that today, sir. You may proceed when you're ready. Good morning, Your Honors. May it please the Court. Opposing counsel. I am Craig Hansen from the Office of the State Appellate Defender, representing the appellant in the matter before this Court today, Mr. Brandon Ford. I'd like to begin with our first issue, and that is we will ask the Court to vacate Mr. Ford's conviction on count two. Count two and count four, the convictions that Mr. Ford accrued, arise from the same act. The State has conceded this point, and we are in agreement on the remedy as well. Where count four is a Class X offense, and count two is a Class I felony offense, the more serious charge will remain. This Court, therefore, we ask that it vacate Mr. Ford's conviction on count two. Moving to issue number two. Mr. Ford contends it was an error for the trial court to admit MC's other crime evidence. As background, the trial court admitted testimony of a woman by the name of MC, or for error's MC for the purposes of this argument, concerning allegations of prior sexual misconduct by Mr. Ford. Admission of other crimes evidence in these cases, although it is allowed to show propensity to commit sex crimes, is in fact allowed. We are all familiar with that. However, it is not automatic. Even in those cases where sexual misconduct against minors is alleged, the court must still consider a number of factors before allowing that testimony to be admitted. Those factors include proximity in time between the prior alleged conduct and the conduct in the instant case, the degree of similarity between the two allegations of misconduct, as well as other relevant facts and circumstances. And I'd like to go down here through the list and discuss our contentions on each point. Mr. Ford contends that the trial court abused its discretion in admitting MC's testimony and that he suffered undue prejudice as a result of that. The first factor is proximity, proximity in time. Here, depending on whose calculations you wish to rely on, a period of between 11 and 15 years elapsed between the allegations that were raised by MC and testified to at Mr. Ford's trial in this case, and the allegations from AK, the victim in this case. Mr. Hanson, my understanding is there is no bright-line rule in Illinois on what length of time... No, there is no bright-line rule. In this case, it's about 15 years. And there's a case, People v. Davis, that said 20 years is okay. Yes, the Supreme Court specifically said it would not establish a bright-line rule in Donoho, which does reference Davis. Davis is a very interesting case, and when the Supreme Court declined to adopt a bright-line rule, it cited a number of cases. Davis in particular was a very interesting case where the defendant in Davis, the evidence that was admitted was not admitted as prior crimes evidence for the purpose of showing propensity. It was actually evidence of consensual adult sexual conduct that was admitted for the purpose of showing the defendant's common plan. Excuse me. It was admitted for purposes other than propensity. The other cases cited by the court in Donohue, Chavez and Ross also, they're distinguishable from this case because Chavez admitted a 15-year-old conviction, which is different than this case. Mr. Ford was acquitted of the charges in his case. And in Ross, the allegation of prior conduct, Ross is also referenced by Donohue in the court's decision not to establish a bright-line. Ross was prior crimes evidence was admitted to show absence of mistake and the intent of the defendant. So in those cases cited by the Supreme Court, they failed to establish a bright-line rule. They declined to establish a bright-line rule. But the cases that they relied on to underpin that judgment differ very differently, differ greatly from the facts in this particular case. Thank you. As I said, 11 to 14 years have elapsed. And, yes, our court has declined to adopt a bright-line rule. But that's not the only factor here, the elapse of time. Similarity of conduct is also one of the factors the court must consider. Here, admittedly, there were a number of similar factors, as we would expect in cases involving sexual misconduct against children. However, while there are similarities, there are some distinct differences. For example, in her testimony, MC provided certain details in her allegations against Ms. Ford that were not present in AK's statements or her allegations. Also, MC testified that at the time of Mr. Ford's alleged prior misconduct, her siblings were at home. That differs from AK's testimony where she said they were alone. So while there are, admittedly, some similarities, there are also differences. But there are other factors as well that the court must consider. MC was an adult at the time that she testified, and, again, approximately 11 to 15 years had elapsed. But she grossly misjudged the interval between the time she alleged the conduct by Mr. Ford and when she testified in this case, or, excuse me, when they went to trial in that prior case. She estimated a few months had gone by when, in fact, three years had elapsed. Also, in this case, Mr. Ford did go to trial on those previous allegations. He was found not guilty. The transcripts of this trial and the records of that entire case, they weren't available. They weren't available to the state. They weren't available to the defense. They weren't available to the court. And they were unavailable to validate what MC was saying or used to impeach her. So that was just not available, which, again, is not unusual in cases where a defendant is acquitted of prior misconduct. But it does bear on the reliability of MC's testimony here. Most importantly, perhaps, is the fact that a jury found Mr. Ford not guilty of the prior alleged conduct. And when you consider all of those factors together, we allege that the court made an unreasonable decision to allow MC to testify and bring in that information. The passage of time, the difference in details, MC's inability to recall, the timeline of significant events related to her initial allegations, the absence of record in Mr. Ford's acquittal all bear on whether the court should have admitted. And we argue that the court abuses discretion in admitting that testimony. And, therefore, we ask that the court demand a new trial. The last issue here is the Illinois Pattern of Jury Instruction 11.66, which is required in child sex cases where out-of-court statements are admitted. This was a closely balanced case. It pitted AK's allegations against Mr. Ford's denial. This is a closely balanced case, and that was established at Naylor. Here, the jury was not instructed to consider AK's maturity, the nature of her statements, or the circumstances under which her hearsay statements were made. Because the Supreme Court has never held that the normal jury instruction given to instruct the jury on witness credibility, 1.02 fully incorporates the required jury instruction, 11.66, we argue that the case should be remanded for a new trial. And for the foregoing reasons, we ask this court to remand for a new trial or in the alternative vacate Mr. Ford's conviction under count two. Are you asking for a plain error review on the issue of the jury instruction? Yes, Your Honor. And it's your belief that because it was a child against your client that it was a closely balanced case? That the evidence presented at trial? We're arguing that it was closely balanced because it pitted the child's allegations and only those allegations against Mr. Ford's denial of those allegations where no other evidence is available to determine the innocence or guilt. How is it different from the Supreme Court case of People v. Sergeant or the appellate court case of the Fourth District, People v. Boomer, where they found it is error, clearly it's error, but it was harmless or didn't rise to the level of harm? The Sergeant was not closely balanced. The defendant admitted to numerous sexual acts with both victims. Therefore, it was not a closely balanced case. And so that distinguishes it. Boomer also is another case that talks about this. With a court-broadly reason that I see my time is up. Thank you. Boomer, the defendant there made inconsistent statements to the police. It was perhaps not as closely balanced as this one is. And so I would say Boomer is distinguishable as well as Sergeant in this case. All right. Thank you. Any questions? Thank you, Your Honor. I'm out of this time, just in case. Not this time. All right. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Mr. Hanson. With respect to the second argument, MC in the 1.5, 7.3 testimony, I hate to do this. I was going to cite a couple of cases I found after the motion to cite additional authority. I filed one as a bratty, 2015, 11-5-130354. It's basically this court's decision. Wait. Are you citing new case law that's not part of your brief? Yes, ma'am. I'm not asking permission. Have you filed a motion in that regard? I filed a motion to cite additional authority as to Issue 3. And I didn't come across these things until afterwards. Are we allowed that motion? I've been allowed to do it before. Let's follow the rules. I mean, do you have a motion pending? No. You know what? I'll withdraw. I'll withdraw that. Thank you. King-Levinson's reliability. The claims against the defendant in her case did not result in a conviction. There are cases out there that state if it didn't result in a conviction or a prosecution, it's not necessarily off the table. The main thing is reliability. And as for MC, she did only recall one time. It involved cold water, which might have had something to do with her memory. She wasn't completely alone, but she was the oldest sibling at seven. And the defendant was babysitting her and her siblings. So they were much younger. But there's absolutely no motive for this lady to come forward after 15 years or 12 years or whatever and relive this for no reason. She didn't know AK. She didn't know AK's family. She moved to Urbana. She moved from the country to the city. She had a boyfriend and a baby. She's working. And she sees it on a Facebook feed. And she says basically, you know, me too. And I think her mom contacted AK's mom. And that's how her evidence was introduced, or how it became introduced. I don't think trial court abuse is discretion under circumstances, allowing her testimony to come in under 115-7S-3. Do you think that the courts should use the rule of people versus Montgomery as a guidepost at all with the 10-year rule, even though the Supreme Court has not set a bright-line test as referenced by Justice Vaughn? Do you think that the 10-year rule should be looked at in any way? I do not, Your Honor. Why not? Well, for one thing, and the legislature has recognized this by, if I recall correctly, eliminating the statute of limitations for cases such like this, offenses such like this, where you're dealing with Montgomery, it's felonies, misdemeanors involving dishonesty, if I'm correct, and not getting a change in a person's life in 15 years. Maybe they were desperate or destitute and they needed to steal back then, so maybe it wouldn't be. But with sex offenses, especially if it follows a discernible pattern, and if we operate under the assumption that these conditions generally can't be cured, then I think that remoteness is just one factor to consider, which is what Donovo reflects. If that answers your question. As for the third issue, failure to give IPI 11.66, at the post-trial hearing this issue was raised, the trial court, relying on Sargent, finding it similar enough, said this was not a close case. No substantial prejudice resulted. The trial court was not the trier of fact, but he was there to see how all this played out. Defendant distinguished that Sargent, in there, there were recanted confessions, 115-10 statements in the victim's testimony. That combination, Spoonbrook said, is overwhelming. Not closely balanced, obviously, overwhelming. Here we don't have recanted confessions, but the facts are similar to Choate, which was cited in the motion beside additional authority. And evidence was not found to be closely balanced. One thing this case has that neither Choate nor Sargent has is 7.3 testimony. So I think that would throw on the safe side of the scale and put it well beyond closely balanced, in my opinion. We also have to look at, Choate instructs, our cases instruct, we have to look at the overall quality of the evidence in a common sense fashion. Now, AK gave age-appropriate, unprompted disclosures along the way. At trial, on page 394, R394, she said, Gina Kent thinks we're otherwise cool between her and the defendant until this happened. She expressed concern about being around him. She expressed concerns about him being around her sister as she was getting older. So I think that was her motivation to disclose. At the post-trial hearing, also, there was a critical issue. Trial counsel was alleged ineffective. He even conceded. The victim's testimony was very impactful. I think the record bears that out. And one thing I would say about the CAC interview with Carr, at the time of the hearing, she said, I'm just around the 1,000 interviews I participated in. By the time of trial, she had done at least 1,000. And I would tell you that is Choate in that interview, because she, and lastly, I would note, although in and of itself it's not indicative of anything, case law suggests, but the jury was out 25 minutes. That's on page C7 of the record, just a notation. Are there any questions? In Booker, People v. Booker, what's the difference between the finding of harmless error and the fact that there was no plain error? Do you know the difference? Between the lack of harmless error and plain error? Yes. In Booker, they found that the failure to give the jury instruction was harmless error, not plain error. I would say that Booker predates more recent precedent that's spoken to the issue, I guess, because I don't think harmless error, there's different tests in my mind with respect to Booker. Do you think Booker supports your position on the failure to give the jury instruction? I didn't find it particularly useful. You didn't? But I didn't cite it, Your Honor. Okay. What about Sargent? Sargent, absolutely. And you don't agree with the defendant's analysis that it was not a close case in Sargent? In Sargent, it was, they declared it overwhelming. Overwhelming. And not a close case with recanted confessions. He went in there and explained to her, actually, thank you, she only wanted one point to permit me to proceed. The defendant, two points actually, when he was interviewed by the cops afterwards, he said, I didn't do anything. I'm sorry for what's going through. Are you in this case or Sargent? This case. Okay. He said, I'm sorry. I don't know what she's talking about. He denied it. But the detective said it was funny. He also said something like, I had a good life. So he thought those were odd. And then also his denials of trial were just like, didn't happen. There were never suggestions. There were never indications. There's never been evidence to suggest why this little girl or YMC were falsely accused of. If there are any other questions, that concludes my presentation. Justice Gaines, any further questions? No, thank you. Absolutely. Thank you. All right, thank you. Thank you, Your Honor. Mr. Hanson, rebuttal. May it please the Court and the closing counsel. To be clear, Mr. Ford does not contend that MC was motivated by ill means or that she intentionally lied on the stand. We would like to draw the Court's attention to the 11 to 15 years of intervening in the case. During which it is possible for an individual to solidify and crystallize certain events that they believed happened over a long period of time. So we don't wish to catch dispersions on MC's testimony. The State noted that the Sergeant did not have testimony admitted under 7.3, but this case did. But I think we have to look at the actual facts in Sergeant where it was overwhelming guilt. Where you have Sergeant that was, you know, there were admissions to, I think I might count, hundreds of acts, whether they were recanted or not. The evidence in that case was just not closely based. And to use Sergeant as a guidepost for determining in this case that the test, the other crimes evidence was properly admitted, I think is a misnomer. Unless the Court has any other questions, that's all I have. Do you think, you're saying that you don't believe the evidence is closely balanced, but do you think? I'm sorry? You said you don't believe the evidence is closely balanced in this case. Do you believe it is closely balanced in this case? Yes, Your Honor. Do you believe, given multiple statements that are consistent, does that weigh our analysis? In terms of a case, multiple statements, that's certainly part of something that a trier of fact may keep in mind. But again, it's based on when you have just two pieces of testimony, it does become a credibility contest. Naylor made that point. What about opposing counsel's argument that the jury thought was only out a short time? Does that weigh the analysis of whether it's closely balanced? Well, the jury wasn't properly instructed either, so I would argue that a jury that's not properly instructed may come to easier conclusions, not having to contend with the certain, having actually been instructed to consider AK's maturity, which I think we can all agree differs from age, the circumstances under which those statements were made, excuse me, as well as the other missing instructions that were not provided, which are required by Supreme Court rule and statute, and there is no blanket rule that says that standard jury instruction 1.02 suffices to fill the void when 11.66 is not given. Thank you. Are there any other questions? Is this okay? It's approved? Yes. All right, thank you. Thank you, Your Honor. We've considered the briefs and we'll consider your arguments.  That's your decision of divorce. Thank you. Thank you.